Battle, J.
 

 We
 
 have examined with that care which their importance demands, the alleged errors assigned by the prisoner’s counsel, in their bill of exceptions, without being able to find any thing in either of them, which can entitle him to a
 
 venire de novo.
 

 The only objection which seems to have any plausibility in it, and upon which alone the counsel have much insisted in their argument here, is the admission, by the Court, of testimony, to prove that the prisoner was a runaway slave at the time when the burglary was proved to have been committed, and that he was connected with a gang of runaways, who had a camp in the Big Swamp, within a few miles of the house which was broken open. It was contended by the counsel that this testimony was irrelevant, because the fact, that the prisoner was a runaway, had no proper tendency to prove that he committed the offense, -and it was incompetent, because it was in effect, offering proof of his character, for the purpose of creating a prejudice against him in the minds of the jury. It was further insisted, that there was no evidence that the burg
 
 *36
 
 lary was committed by the swamp runaways, and it was, therefore, altogether irrelevant to show that they had a camp in the Big Swamp, and that the prisoner was one of their number. This testimony, the counsel contended, could have no legitimate effect upon the issue of the prisoner’s guilt, while it was well calculated to raise an unjust suspicion that all the crimes committed in the neighborhood were to be attributed to these runaways.
 

 This argument is more specious than strong. Upon the trial it was clearly proved, and was not denied by the prisoner’s counsel, that the burglary, charged in the indictment, had been committed. The only question, then, was, whether the prisoner was the perpetrator, or one of the perpetrators, of the crime. Several witnesses testified that the honse was broken open by a “ number of negroes,” and that the prisoner was present at the time; but what he did, it does not appear that any witness was able to state. It was, therefore, necessary (or at least was supposed to be so) to prove clearly, that he was present, either as an actor in the transaction, or was there for the purpose of aiding and abetting, if it should become necessary, those who did commit the offense. This might be done, in the absence of positive proof, by circumstantial testimony; and any testimony, which had the slightest tendency to point to the guilty parties, was clearly admissible. The honse was broken and entered, and several articles stolen therefrom by a “ number of negroes.” What negroes ? That was a proper subject of enquiry. A gang of them had a camp in the swamp not far off. Why could not that fact be proved, to show that they committed the crime? They were renegades, and a “ number of them,” and they were at the time, or about the time, in the vicinity of the transaction, and they were runaways ; who as a class, have a known propensity to steal. That tesiimony, alone, would not have been sufficient to convict them, but it would have been a strong link, in any chain of circumstances, which might have been thrown around them bv other proof, had they been on trial. As to the prisoner, Bill, there was other testimony. Several witnesses stated that
 
 *37
 
 he was present when the crime was committed. He, of course, unless he admitted his guilt, must have insisted, either that the witnesses had sworn falsely, or were mistaken, and that he was not there, or that though present, he took no part in. the transaction. To meet either of these views, the solicitor for the State, had the right, certainly, to show the probability" of his having been there, by proving that he was in the neighborhood at the time ; and if there, that he was a participator, because he was one of a “ number of persons” who, in some respects, answered the description of those who did commit the offense. It was also competent for the solicitor to prove that he was a runaway, because that was a
 
 fact,
 
 and there is no rule of evidence which prohibits the proof of a fact, though it may be prejudicial to the party’s character. Suppose a man were charged with the commission of a burglary in a city, could it not be proved that, about the time of the offense, he was seen in the streets near the place, at a late hour of the night, with burglars’ tools in his possession ? Such would certainly damage his character; and yet no person would doubt its admissibility. Indeed, in every case, depending upon circumstantial testimony, the proof of each and every circumstance, which tends to show the guilt of the party, must necessarily, to some extent, lessen him in the estimation of those who hear it. Our conclusion is, that the presiding Judge did not err in admitting the testimony to which the prisoner’s exception extends.
 

 The remaining two exceptions were not much relied on by the counsel, and certainly have no validity. If our decision be correct in relation to the admission of the testimony about the swamp runaways, and the prisoner’s being one of their number, there was enough evidence to be left to the jury for their consideration, and it was for them alone to say, whether it satisfied them, beyond a reasonable doubt, that the prisoner was present when the burglary was committed, and was a principal either in the first or second degree in the commission of the crime.
 

 The remarks of his Honor, to which the third exception re
 
 *38
 
 lates were, so far as we can discover, proper for the occasion, and were as fair and as favorable to the prisoner as he had any right to ask.
 

 The motion for a
 
 venire de novo
 
 is overruled, and as we have been unable to discover any error in the record proper, it must be so certified to the Superior Court of law for the county of Bobeson, to the end that the sentence of the law may be pronounced upon the prisoner.
 

 Pee Cubiam, Judgment affirmed.